UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SARASOTA COUNTY PUBLIC
HOSPITAL DISTRICT,

    Plaintiff,

v.                                                   Case No: 8:23-cv-263-KKM-TGW

CIGNA HEALTHCARE OF FLORIDA,
INC. and CIGNA HEALTH AND LIFE
INSURANCE COMPANY,

    Defendants.
_____

## ORDER

On July 29, 2022, Plaintiff Sarasota County Public Hospital District (doing business as Sarasota Memorial Health Care System) filed a complaint against Defendants Cigna Healthcare of Florida and Cigna Health and Life Insurance Company (collectively, Cigna) in state court alleging underpayment for emergency services under various state laws. *See* Compl. (Doc. 1-3). On February 7, 2023, Cigna removed the case claiming complete preemption by ERISA. *See* Notice of Removal (Doc. 1). Cigna also moves to dismiss Sarasota Memorial's First Amended Complaint for failure to state a claim and complete preemption under ERISA. *See* Def.'s Am. Mot. to Dismiss (Doc. 21). Sarasota Memorial moves to remand, see Pl.'s Mot. for Remand (Doc. 23), and Cigna replies in opposition,

see Def.'s Resp. in Opp'n (Doc. 28). Because the Court lacks subject-matter jurisdiction over Sarasota Memorial's claims, the Court remands the case.

I. BACKGROUND

Sarasota Memorial is a public community hospital that provides emergency services as required by Florida law. First Am. Compl. (Doc. 1-1) ¶¶ 1, 24. Cigna administers health insurance coverage in and around Sarasota County. *Id.* ¶¶ 2, 3. Cigna issues several types of plans including non-federal, governmental self-insured plans, and private self-insured plans through private-sector employers. *Id.* ¶¶ 4, 6. Sarasota Memorial is an "out-of-network" provider to individuals covered by Cigna. *Id.* ¶ 8. Sarasota Memorial alleges that Cigna has systematically underpaid for out-of-network emergency care for its members. *Id.* ¶ 9.

Sarasota Memorial originally filed a state court complaint on July 29, 2022, alleging claims for failure to pay for emergency care as required by Florida law, breach of contract, quantum meruit, and unjust enrichment. *See* Compl. (Doc. 1-3). Cigna moved to dismiss. *Id.* at 74. In response, Sarasota Memorial filed its First Amended Complaint on January 10, 2023, removing its common law causes of action and adding a cause of action for breach of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA). *See* First Am. Compl.

On February 7, 2023, Cigna removed the case. *See* Notice of Removal. Sarasota Memorial moves to remand because this Court lacks subject-matter jurisdiction and

2

Cigna's removal was untimely. *See* Mot. for Remand at 1. Cigna responds that the case became removable when Sarasota Memorial added a FDUTPA claim to its First Amended Complaint because ERISA completely preempts this claim. Def.'s Resp. in Opp'n at 1.

## II.   LEGAL STANDARD

The removing party bears the burden of establishing subject-matter jurisdiction. *See Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021). Federal courts must also independently assure themselves that they have jurisdiction over a case at every stage, regardless of whether the parties raise the issue or agree that jurisdiction exists. *See Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 324 (2008); *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020). As such, after removal, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (explaining that under the "longstanding interpretation of the current statutory scheme, the question of whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint'"). The well-pleaded complaint rule

3

means that a federal question is "presented" when the complaint—on its face—invokes federal law as the basis for relief. "Th[is] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc.*, 482 U.S. at 392. The Supreme Court long ago declared that, "[b]y unimpeachable authority," a lawsuit "brought upon a state statute does not arise under an act of Congress or the Constitution of the United States." *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 116 (1936).

So too, "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharm. Inc.*, 478 U.S. at 808. Indeed, "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc.*, 482 U.S. at 393. This type of defensive preemption, sometimes called "ordinary preemption," is subject to the well-pleaded complaint rule. *See Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352–53 (11th Cir. 2003). Ordinary preemption provides an affirmative defense to state-law claims but will not provide a basis for removal to federal court. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343–44 (11th Cir. 2009).

"One corollary of the well-pleaded complaint rule," however, is the doctrine of complete preemption. *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987). Distinct from defensive (or ordinary) preemption—which is an affirmative defense that may be invoked in both state and federal court—complete preemption is a "narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims." *Geddes*, 321 F.3d at 1352–53 ("The federal preemptive power may be complete, providing a basis for jurisdiction in the federal courts, or it may be what has been called 'ordinary preemption,' providing a substantive defense to a state law action on the basis of federal law."); *see also Conn. State Dental Ass'n*, 591 F.3d at 1343–44 (explaining that "[c]omplete preemption, also known as super preemption, is a judicially-recognized exception to the well-pleaded complaint rule" and "differs from defensive preemption because it is jurisdictional in nature rather than an affirmative defense").

The Employee Retirement Income Security Act (ERISA) is one such statute that can implicate preemption. Both types of preemption may arise under ERISA, but only complete preemption provides a basis for removal. *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1014. (11th Cir. 2003).

Complete preemption "is jurisdictional" and "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Conn. State Dental*, 591 F.3d at 1344; *Taylor*, 481 U.S. at 65–66. This kind of

5

preemption arises from ERISA's civil enforcement provision in § 502(a), which provides "a comprehensive civil enforcement scheme," which demonstrates "that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (internal quotations omitted). "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.*

*Aetna Health, Inc. v. Davila* set forth a two-part test for determining whether complete preemption applies in the ERISA context. *See id.* at 210. "The *Davila* test thus requires two inquiries: (1) whether the plaintiff could have brought its claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim." *Conn. State Dental*, 591 F.3d at 1345. If any part of the *Davila* test is not met, the Court lacks subject-matter jurisdiction and must remand the case. *See id.* at 1344–45.

To satisfy the first inquiry, the removing party must show that (1) the plaintiff's claim falls within the scope of ERISA, and (2) the claimant has standing to sue under ERISA. *Id.* at 1350. When a healthcare provider brings claims "based upon a breach of an agreement separate from an ERISA plan," the Court must distinguish between "rate of payment" and "right of payment" claims to determine whether the claim falls within ERISA's scope. *Id.* When a provider disputes the amount an insurer paid on a claim but

6

not whether a claim was denied, the provider's claims "are entirely separate from coverage and arise out of [an] independent legal duty." *Id.* (quoting and adopting the reasoning from *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 530–31 (5th Cir. 2009)); *see also Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010) ("[A] 'rate of payment' challenge does not necessarily implicate an ERISA plan, but a challenge to a 'right of payment' under ERISA does.").

Healthcare providers such as hospitals usually lack standing to sue under ERISA because they "generally are not considered 'beneficiaries' or 'participants' under ERISA.'" *Conn. State Dental*, 591 F.3d at 1346 (quoting *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001)). But "a healthcare provider may acquire derivative standing to sue under ERISA by obtaining a written assignment from a 'participant' or 'beneficiary' of his right to payment of medical benefits." *Id.* at 1347 (citing *Hobbs*, 276 F.3d at 1241).

## III. ANALYSIS

Cigna alleges that it removed this action based on federal question jurisdiction. *See* Notice of Removal at 1. Because Sarasota Memorial pleads only breaches of Florida state law and the parties are not diverse, there is no jurisdiction under the well-pleaded complaint rule. *See Conn. State Dental*, 591 F.3d at 1343. Cigna argues that Sarasota Memorial's FDUTPA claim is completely preempted by ERISA, thereby allowing

7

removal. *See* Resp. in Opp'n at 10. Sarasota Memorial responds that Cigna's removal is untimely because its original complaint could have been removed, and, in any event, the operative complaint is not completely preempted. Mot. for Remand at 1. If Sarasota Memorial's FDUTPA claim is not completely preempted, it does not matter whether Cigna could have removed Sarasota Memorial's original complaint because the Court lacks subject-matter jurisdiction. The Court begins and ends with an analysis of Sarasota Memorial's FDUTPA claim under the *Davila* factors. Because Cigna fails to show that ERISA completely preempts Sarasota Memorial's claim under this test, the Court lacks subject-matter jurisdiction.

Cigna argues that the FDUTPA claim is completely preempted because "the Court will necessarily have to interpret the terms of ERISA plans" to determine whether Cigna violated FDUTPA. Def.'s Resp. in Opp'n at 2. Sarasota Memorial responds that its FDUTPA claim is not completely preempted by ERISA for three reasons: (1) it raises rate-of-payment disputes rather than right-of-payment disputes, (2) Sarasota Memorial lacks standing to sue under ERISA because it is not suing upon or relying upon any assignment of coverage by Cigna members, and (3) it arises from and is supported by a legal basis independent from ERISA. Mot. for Remand at 16–23.

The first *Davila* inquiry asks whether Sarasota Memorial "at some point in time, could have brought [its] claim under ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210. This

8

prong is met if (1) the plaintiff's claim falls within the scope of ERISA and (2) the plaintiff has standing to sue under ERISA. *Conn. State Dental*, 591 F.3d at 1350.

First, regarding the scope of ERISA, claims that involve "only underpayment are not preempted." *Id.* at 1349–50. But if claims were "partially denied because coverage was not afforded for all the submitted procedures," those may be preempted. *Id.* Sarasota Memorial does not assert any claims for benefits denied. In fact, Sarasota Memorial specifies that it "is not seeking damages for denials of benefits under private self-insured plans" (the category of plans that might implicate ERISA). First Am. Compl. ¶ 12. *See Borrero*, 610 F.3d at 1302. Unlike the plaintiffs in *Connecticut State Dental Association v. Anthem Health Plans, Inc.*, Sarasota Memorial does not seek relief from denials of reimbursement claims or payments due under an existing provider contract. 591 F.3d at 1350–51. Rather, it seeks recovery of additional payment under Florida law. Resolution of Sarasota Memorial's claim, then, does not require interpretation of ERISA plans or obligations, but rather an analysis of Florida law. *Cf. id.* at 1351 (holding that allegations of violations of ERISA-imposed obligations rather than provider agreement-imposed obligations fell within the scope of ERISA). The first sub-part of the initial *Davila* inquiry thus precludes complete preemption and requires the Court to remand.

But even if Sarasota Memorial's claim required interpretation of an ERISA plan, Sarasota Memorial lacks standing to sue under ERISA. Although Cigna acknowledges

9

that "healthcare providers must have a valid assignment of benefits from an ERISA plan member, and that ERISA member's plan must allow such an assignment," Cigna fails to carry its burden on this issue. Def.'s Resp. in Opp'n at 11 n.2. Cigna argues that it "showed in its notice of removal, and Plaintiff does not dispute, that Plaintiffs meet both of these criteria." *Id.* (citing Notice of Removal at 6–10). But Sarasota Memorial *does* dispute that it has standing under ERISA. *See* Mot. for Remand at 21 (highlighting "Sarasota Memorial's lack of standing"). Sarasota Memorial responds that it "'is not suing upon, or relying upon, any purported assignment of coverage provided by Cigna members or upon any rights that Cigna members may have to pursue against Cigna.'" *Id.* at 20 (quoting First Am. Compl. ¶ 12).

Cigna points to a "list of individual benefits claims," and attaches a declaration to its Notice of Removal claiming that the list shows an assignment of benefits. *See* Resp. in Opp'n at 2, 9; Notice of Removal Ex. D (Doc. 1-4) ¶ 4. In her declaration, Emily Russell, a Cigna operations advisor, alleges that Sarasota Memorial's common claim record indicates that it received assignments of benefits from patients because the record contains a "y" in a column titled "Assign Bens." Notice of Removal Ex. D ¶ 4. But Sarasota Memorial maintains that it is not suing based on any assignment of benefits and submits a declaration controverting Cigna's declaration. *See* Mot. for Remand Ex. A (Doc. 23-1). Megan Riegling, Director of Managed Care for Sarasota Memorial, asserts that Sarasota

10

Memorial's "business practice [is] to reserve its option to seek payment under an assignment of benefits," but such reservation does not "replace, substitute, waive, or forfeit Sarasota Memorial's rights to seek payment under other Florida [laws]," and "Sarasota Memorial has not exercised its option to seek payment through any assignments of the benefits" in this case. *Id.* ¶¶ 6, 7.

As the removing party, it is Cigna's burden to show that this Court has subject-matter jurisdiction. *See Conn. State Dental Ass'n*, 591 F.3d at 1343. Eleventh Circuit precedent is clear that a provider must have a written assignment of claims from a patient to have derivative standing to sue under ERISA. *See Hobbs*, 276 F.3d at 1241; *see also Cagle v. Bruner*, 112 F.3d 1510, 1513–15 (11th Cir. 1997) (holding derivative standing existed when a father signed a form assigning provider his son's right to payment of medical benefits). Even if Sarasota Memorial's common claims record indicates Sarasota Memorial believed it had benefit assignments, the record itself does not provide sufficient evidence that individual patients assigned their benefits to Sarasota Memorial. Cigna offers no evidence of signed assignments of benefits from patients to Sarasota Memorial. At most it is unclear whether Sarasota Memorial has benefit assignments from ERISA plan members. It is clear, however, that Cigna has not met its burden to establish complete preemption under ERISA. *See Hobbs*, 276 F.3d at 1243 (holding that the Court did not have subject-matter jurisdiction when the insurance company "failed to set forth facts in the notice of

11

removal demonstrating that [Plaintiffs] had received assignments of their patients' claims" and "also failed to provide any evidence, or cite to the record, to support its argument that [Plaintiffs] had received assignments from their patients"). Thus, the Court ends its inquiry here because Cigna has failed to show that the first *Davila* prong is met.

## IV. CONCLUSION

Because Cigna has failed to carry its burden to prove complete preemption, this Court lacks subject-matter jurisdiction.

Accordingly, the following is **ORDERED:**

1. Sarasota Memorial Hospital's Motion to Remand (Doc. 23) is **GRANTED.**

2. Cigna's Motion to Dismiss (Doc. 18), and Amended Motion to Dismiss (Doc. 21) are **DENIED as moot.**

3. The Clerk is directed to **REMAND** this action to the Circuit Court of the Twelfth Judicial Circuit, in and for Sarasota County, Florida, and to transmit a certified copy of this order to the clerk of that court; to **TERMINATE** any pending motions and deadlines; and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on April 10, 2023.

Kathryn Kimball Mizelle
United States District Judge

12